Filed 5/4/23  P. v. Disa CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ADAM WADE DISA,<br><br>     Defendant and Appellant. | A165887<br><br>(Solano County<br> Super. Ct. No. VCR210260) |

A jury found defendant Adam Disa guilty of first degree murder. (*People v. Disa* (2016) 1 Cal.App.5th 654, 664 (*Disa I*).)  In defendant's direct appeal, we found sufficient evidence to support the murder conviction, but we reversed due to evidentiary error.  (*Id*. at pp. 657–658.)  Defendant subsequently pleaded no contest to second degree murder.

In 2022, defendant petitioned for resentencing under former Penal Code section 1170.95 (as amended by Stats. 2021, ch. 551, § 2).[1]  The trial court denied the petition on the ground defendant failed to make a prima facie case for relief.  We affirm.  Defendant is ineligible for resentencing

---

[1] The Legislature has since renumbered Penal Code section 1170.95 as section 1172.6 without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).) Further undesignated statutory references are to the Penal Code.

1

because he was convicted based on evidence, including his admission, that he was the actual killer.

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Murder Conviction*

Defendant was charged with the murder of Katie Gillihan and corporal injury on a cohabitant with the special allegation that he inflicted great bodily injury under circumstances of domestic violence. (*Disa I*, *supra*, 1 Cal.App.5th at pp. 658–659.)

<u>Trial Evidence and Jury Verdict</u>

The prosecution's evidence included a videotaped interview of defendant by detectives in which defendant admitted he put Gillihan in chokehold and felt her go limp. (*Disa I*, *supra*, 1 Cal.App.5th at pp. 658–660.) In the interview, defendant stated Gillihan was his girlfriend and they lived together. (*Id*. at p. 659.) He described what led to the killing as follows: " 'I think it was probably around 5:30 in the morning that um, she did, woken me up. And um, she was telling me you need to get out. . . . And um, I was like, well I'm not going anywhere. And then that's when the insults started to happen. . . . And I guess she swung at me and I'm half asleep and after that it's, all I remember is um, I guess I had her in a choke hold and um. To be honest, man I thought she was sleeping because while I went to um, you know, she was laying there and then um, I went to work. I came back that same night and she, I guess she wasn't sleeping.' " (*Id*. at p. 660.) Defendant said he held Gillihan in the chokehold " 'for about a minute or so. Maybe a little bit longer,' " including " '[m]aybe 15 seconds' " after she went limp. (*Ibid*.)

In the videotaped interview, defendant called the hold he used on Gillihan "a 'figure four or something' " and demonstrated the hold for the

2

detectives. (*Disa I*, *supra*, 1 Cal.App.5th at p. 661.) One of the detectives believed "the hold defendant demonstrated was a 'carotid restraint hold.' " (*Ibid*.) A pathologist who conducted an autopsy of the Gillihan testified that, when applied correctly, a carotid hold causes unconsciousness very quickly and can kill a person in a minute. "Based on the autopsy and review of defendant's interview, the pathologist concluded the cause of Gillihan's death was 'asphyxia due to manual strangulation with the carotid sleeper hold.' " (*Id*. at p. 663.)

The defense argued theories of accident, self-defense, and provocation. (*Disa I*, *supra*, 1 Cal.App.5th at p. 673, fn. 13.) The jury found defendant guilty of first degree murder and corporal injury to a cohabitant and found the domestic violence special circumstance true. (*Id*. at p. 664.)

<u>Appeal, Reversal of the Murder Conviction, and Subsequent plea</u>

In *Disa I*, we rejected defendant's appellate claim that the prosecution presented insufficient evidence of premeditation and deliberation to support the jury's determination that he committed first degree murder, but we reversed the murder conviction due to prejudicial error in admitting extensive evidence of the details of defendant's past act of domestic violence. (*Disa I*, *supra*, 1 Cal.App.5th at pp. 657–658.)

After remand to the trial court, defendant pleaded no contest to second degree murder. The parties stipulated the trial court could consider the appellate opinion (*Disa I*) and the probation report originally filed in the matter to establish the factual basis for the plea.

*Petition For Resentencing*

On February 14, 2022, defendant filed a petition for resentencing under section 1170.95. On February 23, 2022, the district attorney filed a response stating that, "[u]pon review of this case," defendant failed to make a prima

facie case because he is not eligible for relief "as he is the actual killer." Defendant was appointed an attorney from the public defender's office who filed a reply. Defendant's attorney took the position that defendant filed a petition that complied with section 1170.95 and therefore he "has met the prima facie burden and this Court should hold a prima facie hearing and rule of [*sic*] the pending request for resentencing pursuant to section 1170.95(c)." Defendant's attorney did not address the district attorney's assertion that defendant was not eligible for relief because he was the actual killer.

On July 26, 2022, the trial court held a hearing on whether defendant made a prima facie case for relief. The court explained that when it receives petitions under section 1170.95 it "do[es] a historical review." Here, the court reviewed the appellate opinion and "the whole file" and did not see how defendant made a prima facie case. Addressing defendant's attorney, the court stated, "I'm relying on the facts of the case, the Appellate decision, all of the issues concerning the Disa case which, again, I trust that you're aware that this is where he killed his significant other. He did it. There's no other—it wasn't felony murder. It wasn't natural, probable consequences. It wasn't anything to apply to a 1170.95."

The court denied defendant's petition, and defendant appealed.

## DISCUSSION

"Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437) eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The law thus "made significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone." (*Strong, supra*, 13 Cal.5th at p. 707.)

4

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.] Under newly enacted section 1172.6,[2] the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met." (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. omitted.)

A person convicted of murder is eligible to petition for relief under Senate Bill 1437 when he or she was "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) An eligible person may file a petition to have that "conviction vacated and to be resentenced on any remaining counts." (*Ibid*.) The petition must include a declaration by the petitioner stating that he or she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id*., subds. (a)(3), (b)(1)(A).)[3]

---

[2] As we have mentioned, section 1170.95 was renumbered 1172.6 without substantive change. We will discuss the current law, section 1172.6.

[3] The petitioner must also (1) declare that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine" and that "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder" (§ 1172.6, subds. (a)(1)–(2), (b)(1)(A)) and (2) provide the superior case number and year of conviction (*id*., subd. (b)(1)(B)).

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708.) But if "the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid*.)

In *Lewis*, the California Supreme Court held that when a defendant files a petition under Senate Bill 1437 that complies with statutory requirements, the defendant is entitled to appointment of counsel. (*Lewis*, *supra*, 11 Cal.5th at p. 963.) The court recognized that "despite the declaration requirement . . ., some petitioners may nonetheless file petitions even when they are not eligible for relief," but hopefully observed, "appointed counsel may ultimately conclude that a petition is clearly meritless and recommend that the petition be withdrawn." (*Id*. at p. 968.)

After counsel is appointed, the trial court may rely on the record of conviction in determining whether the defendant has made a prima facie case for relief. (*Lewis*, *supra*, 11 Cal.5th at p. 970.) "The record of conviction will necessarily inform the trial court's prima facie inquiry . . ., allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed." (*Id*. at p. 971.) "Appellate opinions . . . are generally considered to be part of the record of conviction," but "the probative value of an appellate opinion is case-specific." (*Id*. at p. 972.)

Here, defendant's petition is clearly meritless. "Senate Bill 1437 relief is unavailable if the defendant was . . . the actual killer. " (*Strong*, *supra*, 13 Cal.5th at p. 710.) Defendant was prosecuted for murder based on, among other evidence, his own statements that he put his girlfriend in a chokehold for a minute or more and kept her in the hold for 15 seconds after she stopped moving. (*Disa I*, *supra*, 1 Cal.App.5th at p. 660.) Thus, it is beyond dispute that defendant was prosecuted under the theory he was the actual killer. Appointed counsel should have recognized the "petition is clearly meritless and recommend[ed] that the petition be withdrawn." (*Lewis*, *supra*, 11 Cal.5th at p. 968.)

On appeal, defendant argues the trial court improperly relied on the statement of facts in *Disa I*, quoting the *Lewis* court's instruction that, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) 972.) We disagree. In *Disa I*, we recounted the prosecution's evidence presented at trial, the defenses argued, and the jury's verdict. One need not weigh evidence or exercise discretion to see that the prosecution's theory was that defendant actually killed his girlfriend by putting her in a chokehold.

In any event, the trial court stated that it reviewed "the whole file," not just the appellate opinion. The jury instructions in this case did not include any instruction on felony murder or the natural and probable consequences doctrine or any other theory under which malice is imputed based solely on a person's participation in a crime. This demonstrates defendant was not "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd.

7

(a)), and he is therefore ineligible for relief under Senate Bill 1437 as a matter of law. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [where "no instructions were given on felony murder or murder under the natural and probable consequences doctrine," the petitioner "is not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as a matter of law"].)

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Stewart, P.J.


_____

Richman, J.


A165887, *People v. Disa*

9